NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAHGEAM I. JENKINS, | : | CIVIL ACTION NO. 10-4972 (MLC) |
|  | : |  |
| Petitioner, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| GREG BARTKOWSKI, et. al., | : |  |
|  | : |  |
| Respondents. | : |  |

**COOPER**, District Judge

Rahgeam I. Jenkins challenges a 1998 New Jersey state court conviction and sentence in this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For reasons discussed below, the petition will be denied for lack of merit.

## I.      BACKGROUND

### A.      Procedural History

A Grand Jury returned an indictment on March 11, 1997, charging Petitioner with third degree aggravated assault on a law enforcement officer in violation of N.J.S.A. 2C:12-1(b)(5)(a).  Two months later, on May 13, 1997, a Grand Jury returned a second indictment charging Petitioner with two counts of armed robbery in violation of N.J.S.A. 2C:15-1.  (ECF No. 38-5, Pet. Br. at 1, Da1-2.)[1]

_____

[1]  The State provided the Court with the relevant state court record, but failed to comply with the Court's April 21, 2011 Order directing the State to provide an index of the exhibits identifying each document therein, and that the index be identified by a descriptive name in the electronic filing entry.  (ECF No. 5.)  The Court issued yet another order in this regard on March 25, 2013, when it became apparent that the state court record initially provided was incomplete.  (ECF No.

Petitioner was tried before a jury on the robbery indictment from March 24 through March 26, 1998.  On March 26, 1998, the jury returned a verdict of guilty on both robbery counts.  Petitioner pleaded guilty to the aggravated assault charge the next day, March 27, 1998.

Petitioner was sentenced on both indictments on June 15, 1998.  On the robbery counts, Petitioner was sentenced as a second Graves Act offender to two concurrent 60-year extended prison terms with a 20-year parole disqualifier.  On the aggravated assault conviction, Petitioner was sentenced to a four-year prison term to run concurrent with the robbery sentence pursuant to a plea agreement.  (Id. at 1, 2; ECF No. 10-1, Ra8, 6-15-98 Sentencing Tr.)

Petitioner directly appealed to the New Jersey Appellate Division, which affirmed the sentence and conviction but remanded the matter for calculation of gap-time credit. (ECF No. 10-1, Ra1, 11-5-99 App. Div. Op.)[2]  The New Jersey Supreme Court denied certification.  State v. Jenkins, 163 N.J. 396 (2000).  Petitioner did not petition for a writ of certiorari to the United States Supreme Court.

---

24.)  On May 31, 2013, the State's counsel provided a letter and index of the state court record, together with a hard copy of the record, but did not electronically file same as ordered.  (ECF No. 32.)  The record was electronically filed on December 11, 2013.  (ECF Nos. 37 & 38.) However, the index of exhibits does not match the electronically filed documents, thus making a cumbersome mission for the Court to review the state court record, especially in light of the numerous documents.  The State's response has made this Court's concise and direct reference to the state court record a complicated task.  Thus, the Court will reference first the electronically filed document number, followed by the index number provided in the list of exhibits, and then a description of the document.

[2]   A Change in Judgment of Conviction was entered on April 26, 2000, noting that Petitioner was to receive gap-time credit for the period of time spent in custody from November 8, 1996 to June 15, 1998, for a total of 585 days.  (ECF No. 19-1, Petitioner Traverse at G3.)

Petitioner petitioned for post-conviction relief ("PCR"), pro se, in New Jersey Superior Court on July 5, 2000, and hearings were conducted on April 20, 2001 and June 1, 2001.  (ECF No. 19-1, Petitioner Traverse at G5; ECF No. 38-16, Doc# 10, 4-20-01 PCR Tr.; ECF No. 10-1, Ra2, 6-1-01 PCR Tr.)  The PCR petition was denied.  (ECF No. 38-18, Doc# 12, 7-30-01 Order.)  Petitioner appealed therefrom, and the Appellate Division affirmed.  (ECF No. 10-1, Ra5, 11-22-02 App. Div. Op.)  It does not appear that Petitioner petitioned for certification with the New Jersey Supreme Court.

On January 2, 2003, Petitioner discovered an opinion of the New Jersey Supreme Court, State v. Rue, 175 N.J. 1 (2002), and moved for reconsideration with the Appellate Division.  (ECF No. 19-1, Petitioner Traverse at G36-G42.)  The Appellate Division denied the motion for reconsideration on April 23, 2003.  (Id. at G85.)  The New Jersey Supreme Court denied certification on September 8, 2003.  (Id. at ¶ 15.)

Petitioner filed a second state PCR petition on October 8, 2003, which was denied on October 28, 2003.  (Id. at ¶¶ 16, 17.)  Petitioner appealed, and while that appeal was pending, Petitioner moved to amend his PCR petition to include a challenge to his extended-term sentence based on Blakely v. Washington, 542 U.S. 296 (2004).  The Appellate Division affirmed denial of the second PCR petition.  (ECF No. 10-1, Ra6, 10-29-04 App. Div. Op.)  The New Jersey Supreme Court denied certification on the appeal from denial of the second state PCR petition.  State v. Jenkins, 182 N.J. 628 (2005).

Petitioner moved to correct an illegal sentence on December 16, 2004.  (ECF No. 19-1, Petitioner Traverse at ¶ 20.)  The motion was denied after a hearing.  (ECF No. 38-27, 10-28-05 Mot. Tr.)  Petitioner appealed, and the Appellate Division affirmed the

denial of the motion.  State v. Jenkins, No. A-3620-05T4, 2008 WL 2434869 (N.J. App. Div. June 13, 2008).  The Supreme Court denied certification on June 21, 2010.  State v. Jenkins, 202 N.J. 348 (2010).

Petitioner filed this petition on September 16, 2010.  (ECF No. 1-2.)  After an extension of time was granted, the State filed an answer on August 8, 2011, with an incomplete state court record.  (ECF No. 10.)  On September 7, 2011, Petitioner moved to extend the time to file a traverse.  (ECF No. 11.)  On November 1, 2011, Petitioner moved for production of discoverable materials, an independent examination of fingerprint evidence, and a stay for sentencing.  (ECF No. 12.)  Petitioner filed his traverse on May 29, 2012, rendering his motion for an extension moot.  (ECF No. 19.)  This Court denied Petitioner's motion for production of discoverable materials, an independent examination of fingerprint evidence, and a stay for sentencing on June 28, 2012.  (ECF Nos. 20, 21.)

Petitioner then moved to amend his traverse and for reconsideration of the Court's June 28, 2012 Order.  (ECF Nos. 22, 23.)  On March 25, 2013, this Court granted Petitioner's motion to amend his traverse and deemed the amended traverse filed.  (ECF No. 24.)  But the Court denied Petitioner's motion for reconsideration on March 26, 2013.  (ECF Nos. 28, 29.)

Petitioner moved for discovery on May 9, 2013.  (ECF No. 30.)  In his motion, he asked that Respondents be required to release to Petitioner copies of all documents filed with the Court pursuant to the Court's March 25, 2013 Order (ECF No. 24), in which the Court directed the State to submit copies of the relevant state court record here.  On May 31, 2013, the State provided the Court with a hard copy of the relevant state court record.

4

On November 7, 2013, the State also provided the Court with a diskette of the relevant state court proceedings.  The state court record was later docketed on December 11, 2013. See n.1, supra.

The Court issued a Memorandum Opinion and Order on December 23, 2013 (ECF Nos. 39, 40) denying Petitioner's motion for discovery on the same grounds as set forth in the Court's earlier Opinion and Order (ECF Nos. 20, 21), in which the same discovery requests were denied for failure to demonstrate good cause as required under Rule 6 of the Rules Governing Habeas Corpus Cases Under Section 2254.

The Court received a letter motion from Petitioner on January 9, 2014, again asking that his sentence be stayed, or alternatively, that summary judgment be granted on the issue of his extended sentence as a second Graves Act offender, because the jury "was never asked to decide if the gun being displayed at trial was the actual weapon used against the victims" by Petitioner.  (ECF No. 41 at 3.)  This motion appears to supplement or elaborate Petitioner's claims as asserted in Claims XIII and XIV of his habeas petition.  A copy of this same letter was again sent to the Court by Petitioner's mother, who expressed Petitioner's concern that the prison is tampering with his mail and to ensure that the Court received a copy of the earlier letter motion.  (ECF No. 42.)

### B.    Statement of Facts

This Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the recitation as set forth in the November 5, 1999 opinion of the New Jersey Appellate Division as to Petitioner's direct appeal:

On April 17, 1996, a masked individual armed with a gun robbed two employees of Branning's Collision, an auto body shop in Point Pleasant.  The robber was described as a colored man, six feet two inches tall, 180 or 190 pounds, with a pretty good build.  As a result of extensive police examination, a thumb print was found on an envelope which had been in a jacket which the robber had apparently rifled.  The police were unable to match the fingerprint with any individual.

About two months later defendant was arrested after a motor vehicle stop in Dover Township and a resulting inventory of the impounded vehicle disclosed the presence of a 38 calibre [sic] handgun, which defendant said was his.  Sometime later that year a detective from Point Pleasant learned of the arrest of defendant, the recovery of the gun, and the fact defendant's description matched that of the Branning Collision robber.  He requested a comparison of defendant's fingerprints with the prints found on the envelope.  It was determined one of those was of defendant's thumb.

(ECF No. 10-1, Ra1, 11-5-99 App. Div. Op. at 2.)

## II.     STATEMENT OF CLAIMS

Petitioner raises fourteen claims in his habeas petition, as follows:

**Claim I:**  "[T]he trial court failed to properly instruct the jury on identification."

**Claim II:**  "The trial court violated Petitioner's right to due process and a fair trial by precluding the defense from presenting its theory of the case to the jury during [] summation[, and] Petitioner's rights were then further compromised when both the judge and the prosecutor suggested to the jury that it should convict [Petitioner] because the defense did not counter the State's theory of the case."

**Claim III:**  Petitioner "is entitled to a new trial because the handgun was illegally seized pursuant to an unconstitutional search of [Petitioner's] vehicle."

**Claim IV:**  Petitioner was denied effective assistance of counsel in violation of the Sixth Amendment because trial counsel failed to file a motion to suppress the handgun or a motion under New Jersey Rule of Evidence 404(b) ("Rule 404(b)").

**Claim V:** "Petitioner's formal brief and a presentation of his legal arguments on the merits of the matter involved."

**Claim VI:** Petitioner is entitled to a new trial because the trial judge "failed to voir dire all remainders of the jury panel and/or to nullified [sic] that panel of jurors and order a new panel after one juror poisoned the entire jury selected panel." Petitioner also argues that trial counsel was ineffective "for allowing this unjustice [sic] to take place."

**Claim VII:** Petitioner's PCR counsel failed to raise claims that Petitioner insisted be raised at his PCR hearing, i.e., claims involving false testimony and prosecutorial misconduct, in violation of Petitioner's Sixth Amendment rights.

**Claim VIII:** "Petitioner's ineffective assistance of counsel claims are cognizable on post-conviction review. As those claims are grounds in the Sixth Amendment and in [the] New Jersey Constitution."

**Claim IX:** "Petitioner was prejudiced by counsel's failure to present coherent argument on defense of police fabrication. In as much as he was thereby deprived of only viable defense; thus counsel's ineffective assistance thus render[s] trial fundamentally unfair or unreliable."

**Claim X:** "Petitioner was denied equal protection and due process of law under the [Fourteenth Amendment], when the Appellate Division granted relief to Paul Mackey a case that shares the same issues and factual background contained in Petitioner's case."

**Claim XI:** "The State's use of perjured testimony deprived Petitioner a fair trial" in violation of the Sixth and Fourteenth Amendments.

**Claim XII:**  "The trial court abused its discretion in sentencing Petitioner to a six-year extended term with twenty years of parole ineligibility because a qualitative weighing of the aggravating and mitigating factors in this case does not support such a sentence."

**Claim XIII:**  Petitioner was denied due process when the sentencing court imposed an extended term pursuant to the Graves Act because Petitioner did not qualify for Graves Act sentencing on his current offense.

**Claim XIV:**  "The trial court erred in denying Petitioner's motion to correct an illegal sentence based upon the holding in <u>State v. Franklin</u>, 184 N.J. 516 (2005)," in violation of Petitioner's Sixth and Fourteenth Amendment rights.
(ECF No. 1, Pet. Br. at 17-87.)

The Respondents argue in response that: (1) Petitioner's claims are without substantive merit and fail to state a federal constitutional deprivation; (2) the petition is time-barred; (3) Petitioner's Claim V is unexhausted; and (4) Petitioner has not demonstrated his "actual innocence."  (ECF No. 10, Resp. Answer at 3-24.)

The petition is not time-barred, as it was filed on or about September 16, 2010, well within the one-year statutory period after the New Jersey Supreme Court denied certification on Petitioner's motion to correct an illegal sentence on June 21, 2010. Moreover, Petitioner raised Claim V in one of his state PCR motions.  To the extent that Claim V was not fully exhausted on state court review, the Court will rule on it.  <u>See</u> 28 U.S.C. § 2254(b)(2) ("application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").  The Court will turn to the merits of each claim.

8

### III.   STANDARD OF REVIEW

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

As to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012).

"Clearly established Federal law" is determined as of the date of the relevant state court decision and is limited to the record that was before the state court adjudicating the claim on the merits. Greene v. Fisher, 132 S.Ct. 38, 44-45 (2011); Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Jamison v. Klem, 544 F.3d 266, 274 (3d Cir. 2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, Williams, 529 U.S. at 405, although federal district

and appellate court decisions evaluating Supreme Court precedent may amplify such precedent.  Hardcastle v. Horn, 368 F.3d 246, 256 n.3 (3d Cir. 2004).  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief".  Parker, 132 S.Ct. at 2155.  The state court is not required to cite or even be aware of governing Supreme Court precedents "so long as neither the reasoning nor the result of [its] decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002); see Jamison, 544 F.3d at 274-75.  Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an unreasonable application of Supreme Court precedent.  A state-court decision involves an unreasonable application of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  Williams, 529 U.S. at 407.  A showing of clear error is not sufficient.  Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003).  Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly.  See Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (stating that under § 2254(d)(1), unreasonable application of federal law is different from incorrect application of federal law); see also Metrish v. Lancaster, 133 S.Ct. 1781, 1786–87 (2013); Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005); Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).  "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S.Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786-87; see Metrish, 133 S.Ct. at 1787.

Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions.  See Felkner v. Jackson, 131 S.Ct. 1305, 1307 (2011); Pinholster, 131 S.Ct. at 1398; Eley v. Erickson, 712 F.3d 837, 845 (3d Cir. 2013); see also Harrington, 131 S.Ct. at 786 (stating habeas corpus is guard against extreme malfunctions in state criminal justice systems, not a substitute for ordinary error correction through appeal); Renico v. Lett, 559 U.S. 766, 778 n.3 (2010) ("whether the trial judge was right or wrong is not the pertinent question" when assessing petition); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold"); Lockyer, 538 U.S. at 75 (stating it is not enough that federal habeas court, in its independent review of legal question, is left with firm conviction that state court erred).  This standard applies even where "the state court analyzed and rejected a habeas petitioner's federal claims on the merits but gave

'no indication of how it reached its decision.'" Grant v. Lockett, 709 F.3d 224, 230 (3d Cir. 2013) (quoting Han Tak Lee v. Glunt, 667 F.3d 397, 403 (3d Cir. 2012)).

A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state court proceeding.  See Miller–El v. Cockrell, 537 U.S. 322, 340 (2003).  Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C. § 2254(e); see Rice v. Collins, 546 U.S. 333, 339 (2006) (petitioner bears burden of rebutting presumption by clear and convincing evidence); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).  Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it."  Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly.  Id.

Even if a petitioner is entitled to habeas relief, a court will grant the writ only if the error was not harmless.  Under the harmless error standard, "a court must assess the prejudicial impact of [the] constitutional error in [the] state-court criminal trial".  Fry v. Pliler, 551 U.S. 112, 121 (2007).  A court should hold the error harmless unless it led to "actual prejudice," in the form of a "substantial and injurious effect or influence in

determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quotation omitted); Eley, 712 F.3d at 847.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Rainey v. Varner, 603 F.3d 189, 198 (3d Cir. 2010); Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998).

## IV.  DISCUSSION

### A.  Jury Instruction on Identification

In his first claim for habeas relief, Petitioner alleges that the trial court's jury instruction on identification was "abbreviated" and "woefully inadequate", as the identification of Petitioner was the "critical issue" at trial. Petitioner raised this claim on direct appeal. The Appellate Division rejected Petitioner's claim, ruling as follows:

> We are satisfied the charge sufficiently instructed the jury with respect to the identification issue. The issue was squarely before the jury. Unlike State v. Green, 86 N.J. 281 (1981), and its progeny, identification was not dependent upon the often unreliable observations and recollections of eyewitnesses. Here there was real evidence, a fingerprint which even his own expert agreed was defendant's. To the extent descriptions appeared through the eyewitness testimony given by the victims, the jury was told it should consider their capacity or ability to make observations under the circumstances in which they found themselves. See generally State v. Green, 312 N.J. Super. 456, 461-62 (App. Div. 1998), certif. den., 156 N.J. 425 (1998).

(ECF No. 10-1, Ra1, 11-5-99 App. Div. Op. at 3.)

Generally, a jury instruction does not merit federal habeas relief merely because it is inconsistent with state law. A faulty jury instruction constitutes a due process violation

13

if it so infected the entire trial that the resulting conviction violates due process.  See

Middleton v. McNeil, 541 U.S. 433, 437 (2004); Estelle v. McGuire, 502 U.S. 62, 71-72

(1991).  The instruction must be more than merely erroneous, as a petitioner must show

that there was a "reasonable likelihood that the jury has applied the challenged instruction

in a way that violates the Constitution."  Middleton, 541 U.S. at 437.  The instruction

must not be judged in artificial isolation, "but must be considered in the context of the

instructions as a whole and the trial record."  Estelle, 502 U.S. at 72.

        Petitioner argues that the trial court was required to give the jury a special

instruction regarding the identification testimony pursuant to State v. Green, 86 N.J. 281,

293-94 (1981).  In Green, the New Jersey Supreme Court held that because identification

was the key issue, it was reversible error for the trial court not to give an instruction

which specifically addressed the jury's evaluation of identification testimony.  Id. at 291-

92.  The Court concluded that the jury should have been instructed that "it was the State's

burden to prove beyond a reasonable doubt that it was defendant who had raped [the

victim], that it was not defendant's burden to prove that he was elsewhere when the

offense occurred, and that the State's case depended on the eyewitness identification by

[the victim], setting forth the respective factual contentions relative to her descriptions."

Id. at 293.  The Court also noted that the trial court "could have used as a guide the

Model Jury Charge."  Id.

        Petitioner first contends that the trial court did not give the jury the model jury

charge on identification.  He also argues that the court did not incorporate the facts of the

case into its identification instruction.  Rather, the court gave a jury instruction on

identification that was incomplete and failed to "guide" the jury in "its assessment of this critical evidence."  (ECF No. 1, Pet. Br. at 18.)

This Court finds no error in the jury charge as alleged.  First, there was no in-court or out-of-court identification of Petitioner by any witnesses warranting a more tailored instruction.  Indeed, the jury charge given by the trial judge in this case expressly noted that there was no in-court or out-of-court identification made by the witnesses.  Rather, the witnesses gave a description of the perpetrator and the gun used in the crime in the trial testimony.  Consequently, the trial court explained to the jury that the jury "should consider [the witnesses'] capacity or ability to make observations or perceptions of the perpetrator in the circumstances in which they found themselves.  You as jurors must determine the weight to be given their testimony and its reliability and credibility."  (ECF No. 37-14, Doc# 1, 3-26-98 Trial Tr. Vol. III at 106:13-23.)

The Appellate Division also correctly noted that <u>Green</u> was not applicable because there was "real evidence", i.e., Petitioner's fingerprints, which placed Petitioner at the scene, not the identification of Petitioner by the witnesses.  Thus, there was no identification evidence that needed a more tailored instruction for the jury.

Petitioner seems to suggest that the trial court's jury instruction was deficient because the court did not discuss the purported weaknesses of the witnesses' description or the fingerprint evidence.  The <u>Green</u> case, however, does not require a trial court to comment upon the evidence in the manner urged by Petitioner.  There is a significant difference between a court explaining the law in the context of the facts of the case, and a court commenting upon the credibility of evidence as suggested by Petitioner.  Indeed,

15

there is "no authority ... standing for the principle ... that a court is compelled to ... comment [upon the evidence]", and that "[o]rdinarily, ... trial courts comment on evidence only sparingly, if at all, the better to assure that the ultimate determination of facts is made by the jury." State v. Biegenwald, 106 N.J. 13, 44 (1987).  Here, the identification instruction that Petitioner contends should have been given to the jury consists solely of the alleged inconsistencies and weaknesses in the State's identification evidence that would have constituted a critical commentary upon that evidence, rather than simply an explanation of the law in the context of the facts of this case.

The Appellate Division amply supported its determination that the jury instruction given by the trial court on identification did not constitute plain error.  As discussed above, this Court has carefully reviewed the jury instructions as a whole, as well as the identification instruction at issue, together with the trial record, and likewise finds no error of constitutional dimension.  Assessed in its entirety, the language used by the trial court concerning identification testimony safeguarded, with adequate fairness, Petitioner's due process rights.  The instruction plainly informed the jury that the jury alone must determine the weight, reliability, and credibility to be given the testimony of the witnesses.  Further, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  In short, the trial court's charge to the jury on identification testimony was proper and did not have the capacity to affect the verdict in any substantial or injurious way or prejudice Petitioner in any way. See Brecht, 507 U.S. at 637–38.

Therefore, this Court concludes that Petitioner was not deprived of a fair trial by the overall jury instructions given, including those pertaining to identification evidence. Moreover, the Appellate Division's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B.      Defense Summation Claim

Petitioner next argues that the trial court denied him due process and a fair trial by preventing the defense from presenting its theory of the case to the jury during summation. This alleged error was then compounded when the judge and prosecutor allegedly "suggested to the jury that it should convict [Petitioner] because the defense did not counter the State's theory of the case." (ECF No. 1, Pet. Br. at 23.)

Petitioner's argument is based on an objection by the prosecutor that was sustained by the trial court during summation. Petitioner's trial counsel was discussing the fingerprint evidence found only on an envelope that had been in the jacket pocket of one robbery victim ("Victim"). Previous trial testimony showed that the envelope had been addressed to the Victim's son-in-law ("Son-In-Law"), and had fallen from the Victim's jacket, which had been flung over the back of a chair. Several other items also had fallen from the jacket, including a pair of glasses, a business card, and a receipt for the purchase of windshield wipers. (ECF No. 37, Ra4, 3-25-98 Trial Tr., Vol. II at 24:18-25:9.) When the police arrived at the scene, they took photos of the scene and dusted all the items for fingerprints. Only the envelope yielded usable fingerprint evidence, and the fingerprints

belonged to Petitioner.  (Id. at 97:1-8; ECF No. 37-14, Doc# 1, 3-26-98 Trial Tr. Vol. III at 10:2-10; 47:11-12; 49:8-15.)

But defense counsel raised an issue during summation about where the envelope had been from the time it was dated, February 22, through the date of the robbery, April 17.  (Id. at 80:14-81:6.)  The prosecutor immediately objected, noting that "[t]here is no evidence that Mr. Jenkins came into this – contact with this envelope at any point other than April 17th."  (Id. at 81:8-9.)  The trial court sustained the objection, advising the jury as follows:

> You're going to be told shortly in my instructions that you have to decide this case based upon the evidence that's been presented here in court, as well as any reasonable inferences you might choose to draw therefrom.  And there is no evidence before you that the defendant in this case knows [the Son-In-Law], has ever been to [the Son-In-Law's] house, worked for the post office, worked for Bricktown, or anything else.

(Id. at 81:12-18.)

Thereafter, defense counsel returned to the summation and continued to refute the efficacy of the fingerprint evidence.  (Id. at 81:21-86:14.)

Petitioner raised this habeas claim on direct appeal.  The Appellate Division rejected the argument with little discussion:

> The notion that defendant might have had prior contact with the envelope was founded on hypothetical possibilities as to which there was no evidence, direct or inferential.  See State v. Jones, 308 N.J. Super. 174, 184-185 (App. Div. 1998), certif. den., 156 N.J. 380 (1998).  Although the colloquy with respect to the ruling might better have taken place at side bar, we are satisfied the comments were not capable of being understood as shifting the burden of proof and did not deprive defendant of a fair trial.

(ECF No. 10-1, Ra1, 11-5-99 App. Div. Op. at 3-4.)

Having carefully reviewed the state court record and Petitioner's arguments, this Court finds no basis to grant habeas relief on this claim.  The state court record plainly shows that neither the trial court nor the prosecutor precluded Petitioner's trial counsel from presenting a defense.  Nor did the colloquy by the trial judge during summation improperly shift the burden of proof as asserted by Petitioner.  Moreover, there was simply no evidence or testimony to support Petitioner's hypotheses concerning the fingerprint evidence.  At most, the Appellate Division commented that the colloquy should have been said at sidebar, but rejected any argument that it had shifted the burden of proof or deprived Petitioner of a fair trial.  This Court is satisfied that the Appellate Division's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Therefore, this claim for habeas relief is denied as substantively meritless.

### C.      Suppression of Handgun Issue

Petitioner next argues that he is entitled to a new trial because "the handgun was illegally seized pursuant to an unconstitutional search of his vehicle."  (ECF No. 1, Pet. Br. at 27, Claim III.)  He further contends that his trial counsel was ineffective for failing to move to suppress the handgun or make a Rule 404(b) motion.  (Id. at 28-31, 33-38, Claim IV.A.)  Petitioner did not raise the unlawful search and seizure (handgun) claim on direct appeal, but instead couched it in terms of an ineffective assistance of counsel claim in his state PCR petition, i.e., that counsel failed to file an appropriate motion to suppress or a Rule 404(b) motion.

At trial, the State's proffer of the handgun was first discussed during the March 24, 1998 Miranda hearing.  Defense counsel vigorously argued against introduction of the handgun at trial, suggesting that any proffer by the State concerning the identity of the handgun would be evidence of a prior bad act to prove the robbery at issue.  (ECF No. 10-1, Ra3, 3-24-98 Miranda Hearing Tr. at 20:20-21:25; 24:9-25:1.) [3]  The Court ruled that the State's intended proffer of the handgun, with no reference to the other robbery and arrest warrant, was appropriate and within the limitations of the New Jersey Rules of Evidence.  (Id. at 27:4-7.)

In his state PCR proceedings, Petitioner raised the claim that trial counsel was ineffective for failure to file a motion to suppress the handgun or to preclude introduction of the handgun under Rule 404(b).  At the first PCR hearing on April 20, 2001, the trial court commented on the argument by Petitioner's PCR counsel regarding the efficacy of a motion to suppress given the state of the law at the time of the search at issue.  The court noted that there was no constitutional basis to attack the search of the vehicle, which yielded the handgun, because the search was "entirely lawful, reasonable and within the purview of the search incident to an arrest."  (ECF No. 38-16, Doc# 10, 4-20-01 PCR Tr. at 12:1-9.)  The PCR court further surmised that Petitioner's trial counsel "didn't file a motion to suppress because, as a matter of law, that's not a basis at that

---

[3]  The handgun was obtained as a result of an investigation of another robbery.  An arrest warrant had been issued for Petitioner in connection with that robbery, and Petitioner had tried to elude police in a car chase.  Petitioner crashed the car and ran into the woods where he was then apprehended and arrested.  His car was searched and the handgun was found.  (Id. at 5:6-7:23; 13:20-14:3; 26:5-12.)

point in time." (Id. at 12:10-12.)  However, the court adjourned the PCR motion to allow

Petitioner's PCR counsel to supplement his claim.

A hearing was held on the PCR petition on June 1, 2001.  The State argued that

Petitioner's ineffective assistance of counsel claim on the suppression of the handgun

issue lacked merit because the facts or discovery did not bear out any notion of an

unlawful search or seizure.  The State noted that there had been two arrest warrants out

for Petitioner and the passenger in the vehicle.  There had been a stake-out of their

residence and the vehicle was spotted.  The vehicle was pursued and Petitioner struck a

tree in flight, where he exited the vehicle and fled on foot.  He was apprehended, arrested,

and the vehicle was impounded and inventoried.  (ECF No. 10-1, Ra2, 6-1-01 PCR Tr. at

4:20-5:6.)  Moreover, the State argued that the gun barrel was visible from the passenger

compartment and not the trunk, so there was simply no merit to suppress the search in the

trial proceedings as claimed by Petitioner.  (Id. at 5:11-16.)

At the June 1, 2001 PCR hearing, the court observed that the suppression issue

was raised under the guise of an ineffective assistance of counsel claim because it would

have been barred otherwise since it was not raised on direct appeal.  (Id. at 6:1-7.)

Further, the court rejected the merit of an ineffective assistance of counsel claim on this

ground because even "a first-year law student could see from a review of these facts that

a motion to suppress would not be cognizable and would not even remotely have any

chance of success." (Id. at 6:22-25.)

The PCR court discussed the standard under Strickland v. Washington, 466 U.S.

668 (1984), with respect to Petitioner's ineffective assistance of counsel claim.  (Id. at

10:22-12:16.) In particular, the PCR court found that the failure to file a suppression motion does not constitute per se ineffectiveness, citing <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986). (<u>Id.</u> at 12:19-24.) Thus, there was no deficiency of performance in this regard. The court further determined that Petitioner could not prove that his Fourth Amendment claim was meritorious, which was necessary to show the second <u>Strickland</u> prong, i.e., that Petitioner was prejudiced by his trial counsel's failure to file a motion to suppress. (<u>Id.</u> at 13:1-14:3.) The court emphasized that Petitioner "ha[d] not shown one piece of evidence that could lead this Court to even speculate that if such a motion had been filed, it would have had any merit whatsoever." (<u>Id.</u> at 14:4-7.)

On appeal from denial of the first PCR petition, the Appellate Division found that Petitioner's "contentions are without merit ... substantially for the reasons given by [the Superior Court Judge] in his oral opinion of June 1, 2001." (ECF No. 10-1, Ra5, 11-22-02 App. Div. Op. at 2-3.)

### 1. Fourth Amendment Claim

This Court first addresses Petitioner's Fourth Amendment claim as asserted in Claim III of his petition. A federal habeas court cannot review a Fourth Amendment claim if a petitioner had a full and fair opportunity to litigate the claim in the state courts. See <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976); <u>see also</u> <u>Wright v. West</u>, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether a petitioner actually availed himself of that mechanism. See <u>U.S. ex rel. Mickey v. Jeffes</u>, 571 F.2d 762, 766 (3d Cir.

1980); Boyd v. Mintz, 631 F.2d 247, 250 (3d Cir. 1980).  Conversely, a petitioner has not

had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore,

avoids the Stone bar, if the state system contains a structural defect that prevented the

state court from fully and fairly hearing that Fourth Amendment argument.  See Marshall

v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002).

 Although Petitioner's trial counsel never filed a motion to suppress the handgun,

the fact that New Jersey courts provide a mechanism for such a suppression via their

court and evidentiary rules satisfies the "full and fair opportunity to litigate" requirement

for federal habeas purposes.  Id.; see Price v. Phelps, 894 F.Supp.2d 504, 516 (D. Del.

2012).  Indeed, "[w]hether the petitioner actually took advantage of the opportunity is

irrelevant; so long as the opportunity was available, the bar against raising the Fourth

Amendment claims on collateral review applies."  Jackson v. DiGuglielmo, No. 03-5398,

2006 WL 1147517, at *6 (E.D. Pa. Apr. 27, 2006).  Accordingly, Petitioner's Fourth

Amendment claim is barred by Stone.

 The Petitioner's Fourth Amendment claim, in any event, is entirely meritless.  At

the time of the incident at issue, the law allowed a warrantless search of a vehicle

incident to arrest to ensure police safety or to avoid the destruction of evidence.  Chimel

v. California, 395 U.S. 752, 762–63 (1969); New York v. Belton, 453 U.S. 454 (1981);

see also Stokes v. Bartkowski, No. 11-3133, 2013 WL 1934562, at *18 (D.N.J. May 3,

2013).  The events of Petitioner's arrest and the subsequent search of the vehicle incident

to that arrest were consistent with the state of the law at that time.  Moreover, discovery

in Petitioner's state criminal proceedings showed that the gun barrel was visible from the

passenger compartment and not the trunk.  Therefore, Petitioner's Fourth Amendment

claim for federal habeas relief is denied for lack of merit.

### 2.     Ineffective Assistance of Counsel Claim

In Claim IV of the petition, Petitioner asserts that trial counsel was ineffective for

failing to file a motion to suppress the handgun, or alternatively, a motion under Rule

404(b) to preclude testimony and introduction of the handgun at trial based on the ground

that it was being offered as evidence of a prior bad act to prove the robbery at issue.

To prevail on a claim of ineffective assistance of counsel, Petitioner must show

that (1) counsel's performance was so deficient as to deprive him of the representation

guaranteed under the Sixth Amendment of the Constitution, and (2) the deficient

performance prejudiced the defense by depriving the defendant of a fair trial.  Strickland,

466 U.S. at 687.  To show prejudice under Strickland, Petitioner must show that there is a

"reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  Rainey, 603 F.3d at 197-98.  "The benchmark

for judging any claim of ineffectiveness must be whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be

relied on as having produced a just result."  Strickland, 466 U.S. at 686; Ross v. Varano,

712 F.3d 784, 797–98 (3d Cir. 2013).

"Since Strickland, the Supreme Court and [the Third Circuit] have emphasized the

necessity of assessing an ineffectiveness claim in light of all the circumstances."  Siehl v.

Grace, 561 F.3d 189, 195 (3d Cir. 2009) (citing cases).  When a federal habeas petition

under § 2254 is based upon an ineffective assistance of counsel claim, the "pivotal

question is whether the state court's application of the Strickland standard was unreasonable," which "is different from asking whether defense counsel's performance fell below Strickland's standard." Grant, 709 F.3d at 232.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  See id.  "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the Strickland standard itself." Id.  Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential."  Id. (quoting Pinholster, 131 S.Ct. at 1403).  Federal habeas courts must "take a highly deferential look at counsel's performance" under Strickland, "through the deferential lens of § 2254(d)."  Id. (internal quotations and citations omitted).

As discussed above, it is plain that Petitioner's trial counsel did argue against the State's proffer of the handgun on the ground that it was being offered as evidence of a prior bad act to prove the robbery at issue.  This application was made at a pretrial Miranda hearing on March 24, 1998, and the trial judge rejected counsel's argument, finding that the proffer was appropriate because the State was limiting the introduction solely to the vehicle stop without mention of arrest warrants and another robbery investigation.  (ECF No. 10-1, Ra3, 3-24-98 Miranda Hearing Tr. at 27:4-7.)  Therefore, Petitioner has not shown deficient performance by trial counsel, the first prong under Strickland necessary to prevail on this claim of ineffective assistance of counsel.

As to the suppression motion, this Court concludes that Petitioner's trial counsel was not ineffective for failing to move to suppress where plainly no objection could have been made under the Fourth Amendment.  Thus, this Court is satisfied that the state

courts correctly identified and applied the controlling Supreme Court precedent as to

Petitioner's claims of ineffective assistance of counsel.  See Parker, 132 S.Ct. at 2151

(finding when state court has adjudicated petitioner's federal claim on merits, district

court "has no authority to issue the writ of habeas corpus unless the [state court's]

decision 'was contrary to, or involved an unreasonable application of, clearly established

Federal Law, as determined by the Supreme Court of the United States,' or 'was based on

an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding'" (quoting 28 U.S.C. § 2254(d))).  Further, Petitioner has not pointed to

any evidence suggesting that the determination of facts in state court was unreasonable.

Claim IV asserting ineffective assistance of trial counsel is thus denied as substantively

meritless.

### D.    Restraint Issue

Petitioner captions Claim V of his habeas petition as his "formal brief and a

presentation of his legal arguments on the merits of mater involved."  (ECF No. 1, Pet.

Br. at 38.)  Petitioner simply rehashes his theories concerning the fingerprint evidence

and makes conjectures of facts that were not in evidence at trial.  Consequently, to the

extent that Petitioner's theories are not based on facts and evidence at trial, and do not

assert any constitutional violation, Claim V is denied for failure to state a claim of

constitutional dimension.

But Petitioner does argue that the trial court and sheriff's officers allowed him to

be seen in handcuffs by a juror in violation of his right to due process and a fair trial.

This claim was never raised on appeal in state court, but the trial judge addressed the

matter at sidebar with that juror during the criminal trial proceeding.  During the sidebar colloquy, it was ascertained that the juror had seen Petitioner in handcuffs as the juror was walking to the cafeteria during a break.  In response to direct inquiries, the juror assured the court that he did not believe Petitioner to be a dangerous person or guilty of the charge merely because Petitioner was wearing handcuffs.  He affirmed that he "understood what the process is," i.e., that people are often held in jail pending charges. (ECF No. 10-1, Ra4, 3-25-98 Trial Tr., Vol. II at 79:13-80:4.)  The trial court then asked if the juror had spoken of the matter to other jurors, to which the juror responded that he had not.  The court then instructed the juror not to discuss the matter with the jury, and excused the juror from the courtroom.  (Id. at 80:5-9.)  Petitioner's counsel asked the court to excuse that juror from the jury, but the court declined, being satisfied that the juror was "forthright" and expressed no bias from seeing the Petitioner in handcuffs.  (Id. at 80:16-81:4.)

The "State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." Estelle v. Williams, 425 U.S. 501, 512 (1976).  The Due Process Clause also prohibits routine use of physical restraints visible to the jury during the guilt phase of a criminal trial.  Deck v. Missouri, 544 U.S. 622, 624, 626 (2005).  Nevertheless, where a court, without adequate justification, orders a defendant to wear shackles in view of a jury, the error is subject to harmless-error analysis under Chapman v. California, 386 U.S. 18, 24 (1967).  Deck, 544 U.S. at 635; see United States v. Salehi, 187 Fed.Appx. 157, 173-75 (3d Cir. 2006).

Numerous courts, moreover, have distinguished the situation in which a shackled criminal defendant is briefly observed by jurors while being transported, generally finding such encounters harmless.  See, e.g., United States v. Lattner, 385 F.3d 947 (6th Cir. 2004); United States v. Olano, 62 F.3d 1180, 1190 (9th Cir. 1995); Wright v. Texas, 533 F.2d 185 (5th Cir. 1976); Pantusco v. Lagana, No. 11-680, 2013 WL 4446965, at *6 (D.N.J. Aug. 16, 2013).

There is no suggestion here that Petitioner was shackled or handcuffed during the entire trial; rather, the state court trial record confirms that Petitioner was seen in handcuffs only once by one juror while that juror was on a break outside the courtroom. Moreover, there is no evidence to suggest that Petitioner suffered any harm or prejudice because one juror saw Petitioner in handcuffs fleetingly outside the courtroom while on recess.  The record shows that the juror understood the "process" and did not perceive Petitioner to be dangerous or guilty of the charge merely because he was in handcuffs outside the courtroom.  Therefore, this Court finds that Petitioner is not entitled to habeas relief on this meritless due process claim.

### E.     Tainted Jury Panel Claim

In Claim VI for habeas relief, Petitioner argues that he was denied a fair trial by an impartial jury.  Specifically, Petitioner contends that during the jury selection process, a member of the jury panel made "prejudicial and derogatory comments about Petitioner and his family," but the trial judge "made no effort whatsoever to voir dire the other members of the jury panel to assess if they also heard the disparaging and prejudicial comments," nor did the judge dismiss the entire jury panel.  Petitioner further argues that

his trial counsel was ineffective for "allowing this injustice to take place."  (ECF No. 1, Pet. Br. at 43-50.)

The state court record shows that during jury selection, a juror ("First Juror") informed the trial court that he overheard another juror ("Second Juror") make a derogatory remark about Petitioner's family, i.e., that they were "bad" people.  The trial judge conducted a sidebar interview of the First Juror and all those jurors who were seated near the Second Juror who may have overheard the comment.  The judge excused the First Juror, the Second Juror, and all jurors who had overheard the remark by the Second Juror, even though the jurors said they would not be influenced by it.  The judge further directed the sheriff's officers to remove the Second Juror from the courthouse to prevent any possible taint to the finalized jury panel.  Also, yet another juror ("Third Juror") had informed the judge that he knew Petitioner's relatives.  There was no indication in the transcript that the Third Juror made any comments concerning Petitioner's character or reputation.  The court excused the Third Juror from the jury panel and instructed the Third Juror not to discuss the matter with any members of the jury panel or anyone in the courthouse.  (3-25-98 Trial Tr., Vol. I at 73:3-79:23; 88:21-89:23.)[4]

Petitioner raised this claim regarding a biased jury in his initial PCR petition, and the matter was discussed at the first PCR hearing on April 20, 2001.  (ECF No. 38-16,

---

[4] There does not appear to be a copy of the March 25, 1998 Transcript of the jury selection made available by the State.  The transcript was quoted and referenced by the Petitioner and the State in their respective briefs on appeal from denial of the first state PCR petition, which were provided by the State in the list of exhibits at ECF Nos. 37 and 38.  (See ECF No. 38-5, Pet. Br. at 15-23; ECF No. 37-3, Resp. Br. at 12-14.)

Doc# 10, 4-20-01 PCR Tr. at 2:5-6:5.)  At a second hearing on June 1, 2001, the PCR court found that Petitioner's claim regarding a tainted jury selection was procedurally barred and, although couched in terms of an ineffective assistance of counsel claim, found no deficient performance by counsel or prejudice to Petitioner as required under Strickland in order to prevail on an ineffective assistance of counsel claim.  (ECF No. 10-1, Ra2, 6-1-01 PCR Tr. at 7:1-18; 8:2-7.)

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."  Irvin v. Dowd, 366 U.S. 717, 722 (1961); Hetzel v. Lamas, 372 Fed.Appx. 280, 282 (3d Cir. 2010).  Jurors are presumed to be impartial.  See Irvin, 366 U.S. at 723.  However, a defendant's right to "due process does not require a new trial every time a juror has been placed in a potentially compromising situation....  Due process means a jury capable and willing to decide the case solely on the evidence before it".  Smith v. Phillips, 455 U.S. 209, 217 (1982).

A trial court has the duty to conduct a hearing as to jury impartiality when there is evidence of extraneous influences on the jury.  See United States v. King, 627 F.3d 641, 650 (7th Cir. 2010) ("judge's duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality") (internal quotations and citation omitted); United States v. Maye, 241 Fed.Appx. 638, 641 (11th Cir. 2007) ("district court abuses its discretion, or plainly errs, in failing to hold an investigatory hearing only when there is evidence that the jury was subjected to influence by outside sources") (internal quotations and citation omitted); United States v. Davis, 177 F.3d 552, 557 (6th Cir. 1999) ("Where

a colorable claim of extraneous influence has been raised ... a ... hearing must be held to afford the defendant an opportunity to establish actual bias.") (internal quotations and citation omitted); United States v. Thornton, 1 F.3d 149, 155 (3d Cir.1993) ("We have previously expressed a preference for individual juror colloquies where there is a significant possibility that a juror ... has been exposed to prejudicial extra-record information.") (internal quotations and citation omitted).  There is a key distinction between intra-jury communications and extra-jury influences, as extra-jury influences "pose a far more serious threat to the defendant's right to be tried by an impartial jury." See United States v. Resko, 3 F.3d 684, 690 (3d Cir. 1993).

In Claim VI of the petition, Petitioner presents an argument of jury impartiality and contends that the trial court should have excused the entire jury panel because of extraneous and derogatory remarks made by one member of the jury panel that was overheard by others.  As the state court record shows, the court conducted the requisite inquiry concerning the prejudicial impact of the remark and removed the juror who made the comment and all those jurors who overheard the remark.  Indeed, the court ensured that the juror who made the remark was removed from the courthouse entirely.  Thus, there was no prejudicial impact remaining in the impaneled jury and Petitioner has provided no evidence of juror bias to support his claim.  Therefore, because the state court record plainly does not establish that Petitioner's constitutional right to an impartial jury was denied, Claim VI for habeas relief is denied.

Petitioner also makes a corollary argument that his trial counsel was ineffective "for allowing this unjustice [sic] to take place."  This Court has reviewed the record and

finds no instance of deficient performance as to the issue of jury impartiality.  Trial counsel requested that several jurors who overheard the remark be excused, and the judge complied.  Moreover, because this Court has determined that there was no evidence of jury bias to support a Sixth Amendment violation, Petitioner cannot show the necessary prejudicial impact under the second prong in Strickland.  Accordingly, this ineffective assistance of counsel claim is likewise denied as meritless.

### F.    Ineffective Assistance of PCR Counsel

Petitioner asserts in Claim VII that his state PCR counsel failed to raise all claims requested by Petitioner at the PCR hearing, in violation of his Sixth Amendment right to effective assistance of counsel.  In particular, Petitioner contends that his PCR counsel failed to raise six separate claims of ineffective assistance of trial counsel that Petitioner requested.  (ECF No. 1, Pet. Brief at 51.)[5]  He further argues that the PCR court should have directed PCR counsel to "investigate and brief the court regarding [Petitioner's] claims."  (Id. at 54.)

---

[5] These requested claims were set forth in a letter to PCR counsel as follows:

> 1.  Inadequate representation by the trial and appellate counsels on suppression of other crimes evidence. R. 404(b) pages 1-4.

> 2.  Trial counsel's failure to object to the state's use of perjured testimony.  U.S. v. Agurs, 427 U.S. 97 [] (1976).

> 3.  Trial counsel's failure to object to the prosecutor's prejudicial remarks.

> 4.  Failure of trial counsel to thoroughly cross-examine a witness.

> 5.  Trial counsel's failure to impeach the state's witness when credibility was the pertinent issue at trial.

> 6.  The state[] tampering with or fabricating physical evidence[] against petitioner.

(Id.)

Section 2254 explicitly excludes from the scope of federal habeas relief a claim based upon ineffective assistance of PCR counsel. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i); see also Coleman v. Thompson, 501 U.S. 722, 752-53 (1991) (holding there is no constitutional right to counsel in state post-conviction relief proceedings and, consequently, ineffective assistance of counsel in state post-conviction relief proceedings does not provide ground for federal habeas relief); Taylor v. Horn, 504 F.3d 416, 437 n.17 (3d Cir. 2007) (noting same and citing Coleman).  Therefore, to the extent that Petitioner is claiming ineffective assistance of PCR counsel for purposes of federal habeas relief, this claim is denied pursuant to 28 U.S.C. § 2254(i).

Nevertheless, this Court presumes that Petitioner may be claiming ineffective assistance of PCR counsel to overcome any procedural bar in raising the ineffective assistance of trial counsel claims that PCR counsel allegedly neglected to present in the first PCR petition.  See Martinez v. Ryan, 132 S.Ct. 1309 (2012) (holding inadequate assistance of counsel at initial PCR proceedings may establish cause for procedural default of substantial claim of ineffective assistance of trial counsel).  When faced with a procedural default issue with respect to ineffective assistance of counsel claims on habeas review, the federal court must determine whether the PCR counsel in the first state PCR proceeding was ineffective, whether the underlying ineffective assistance of trial counsel claim was substantial, and whether the petitioner was prejudiced.  Id. at 1320-21.

Petitioner here cannot show ineffective assistance of PCR counsel, nor has he shown a substantial claim of ineffective assistance of trial counsel.  The PCR court commended Petitioner's counsel at the initial PCR hearing, stating that PCR counsel had "covered every possible avenue ... thoroughly, ... diligently and with a high degree of deliberation."  (ECF No. 38-16, Doc# 10, 4-20-01 PCR Tr. at 13:16-20.)  Thus, Petitioner has not made a showing that his PCR counsel was ineffective.

Petitioner's additional claims of ineffective assistance of trial counsel were considered by the PCR court and rejected for lack of merit.  Indeed, despite Petitioner's voluminous brief and arguments, Petitioner neglects to admit that the PCR court did in fact adjourn the PCR proceedings on April 20, 2001, in order to review the additional documents submitted by Petitioner in support of his claims.  (Id. at 16:11-17.)  Moreover, on June 1, 2001, the PCR court stated that it had reviewed each argument advanced by Petitioner before rendering a decision, including Petitioner's pro se memorandum submitted at the April 20, 2001 hearing.  The court expressly stated:

> THE COURT:  In all deference to you not having the material that you needed to complete your brief because you didn't have access to legal books, let me say this.
>
> My decision is not based solely alone on the information that you provide me as a matter of law.  It is not based solely alone on the information provided to me by Mr. Sliwinski or any counsel in their briefs or by the prosecutor in their briefs.
>
> Independent and separate and apart from any arguments or case law or statutory law cited to this Court by counsel or any applicant or petitioner such as yourself, this Court, with the aid of its law clerk and staff, does independent legal research into these issues.
>
> To say it quite frankly and even more bluntly, I don't rely on the law as interpreted by anybody.  And I don't accept it for face value as they write it or speak it.  I do my own independent research.

And I have looked at these issues in this case specifically.  I have read the transcripts.  I have read everything.  I have considered every argument.  My decision, if I could characterize it, is an omnibus decision.

And while I certainly do not want to tell you that you should not continue on your own behalf to research the law, I am telling you that unless there is some newly discovered evidence that was not available to you or the State, or in any way, shape or form unknown were to come forward, my analysis of this case leads me to the conclusion that I can't imagine in the law as I have researched it, independently of what has been submitted, any issue that would have made me rule in a different manner.

THE DEFENDANT:  Your Honor, no disrespect, sir.  I didn't receive at no point in time this fingerprint.  The fingerprint is the main thing, main point in this case.  I never received a copy.

THE COURT:  I don't want to argue with you, but the transcript belies what you are telling me.

You must have a selective recollection, because as I review every one of your arguments, including when you told Mr. Sliwinski that transcript was deficient, that the transcript had been manufactured with regard to the issue of the jury selection, and when you said that the issues were inferred with regard to the fingerprint and you didn't receive it, at trial you called a fingerprint expert in your defense.

Now, if you didn't have anything to do with the fingerprint and you didn't know about it, how did you know enough to call a fingerprint expert in your part of the case?

(ECF No. 10-1, Ra2, 6-1-01 PCR Tr. at 14:20-15:19; 16:12-23.)

It is plain from review of the state court record that Petitioner cannot establish a substantial claim of ineffective assistance of counsel at any stage of his state court proceedings warranting habeas relief in this case, including but not limited to his PCR counsel.  Therefore, Claim VII is denied in its entirety for lack of merit.

## G.  Ineffective Assistance of Counsel Claims

Petitioner sets forth legal argument in Claim VIII only with regard to his claims of ineffective assistance of counsel, and he makes no specific, factual claims of ineffective

assistance of counsel in Claim VIII.  In Claim IX, however, Petitioner asserts that his trial

counsel was ineffective for failing to "present coherent argument on defense of police

fabrication," thereby depriving Petitioner of his "only viable defense."  (ECF No. 1, Pet.

Br. at 68.)

      This claim was raised on state PCR review.  The "fabrication" arguments center

on the fingerprint evidence, i.e., an envelope allegedly found at the scene of the robbery

that contained Petitioner's fingerprint.  Petitioner argues that (1) there was no photo

showing the envelope at the scene, (2) only the police officer's testimony about the

location of the envelope was provided to the Grand Jury, (3) there was a discrepancy in

the officer's testimony at trial as to how many items were observed at the scene, and (4)

Petitioner's witness --- a detective --- had not conducted an independent examination of

the envelope.  (Id. at 68-70.)  As to the last argument, it appears that Petitioner is

claiming that fingerprint evidence was concealed or withheld from the defense.

      The PCR court ruled that Petitioner's claim of "prosecutorial misconduct based on

the alleged concealment of the fingerprint evidence" lacked merit because the defense had

"called an expert to testify in the area of fingerprint analysis and examination."  (ECF No.

10-1, Ra2, 6-1-01 PCR Tr. at 10:4-8.)  On appeal from denial of the PCR petition, the

Appellate Division affirmed the PCR court's ruling without discussion.  (ECF No. 10-1,

Ra5.)

      The Court is satisfied that the ineffective assistance of counsel claim alleging

counsel's failure to present a defense of fabrication of fingerprint evidence, as presented

by Petitioner in Claim IX of his petition, is insufficient to warrant habeas relief, as the

state courts' decisions on the ineffective assistance of counsel issues were not contrary to, and did not involve an unreasonable application of, clearly established federal law. Nor were they based on an unreasonable determination of the facts presented in the state court proceedings. Petitioner has failed to establish either prong under Strickland, or to present any evidence to support his claim of fabrication. Therefore, this claim is denied as substantially meritless.

### H.    Equal Protection Claim

Petitioner asserts in Claim X that he was denied equal protection and due process because the Appellate Division granted relief to Paul Mackey in a separate case that purportedly shares the same issues and factual background as Petitioner's case.

Although Petitioner fails to provide a citation, the Court presumes Petitioner refers to State v. Mackey, No. A-4614-04T4, 2007 WL 1827393 (N.J. App. Div. June 27, 2007). Mackey argued that the PCR court had abused its discretion in denying his request for fingerprint evidence, and that trial counsel was incompetent for failing to engage a fingerprint expert. Id. at *1. Mackey's initial PCR petition was denied, but the matter was remanded by the Appellate Division because Mackey's PCR counsel had "denigrated one of defendant's pro se arguments and appeared to have abandoned the remainder without presenting evidence that defendant had waived them, [in violation of] the duties of representation set forth in State v. Rue, 175 N.J. 1, 18-19 (2002)." Id. at *3. On remand, new counsel was assigned and discovery was requested. The PCR court denied relief again in a written opinion dated November 5, 2004. Mackey appealed and the Appellate Division affirmed denial of post-conviction relief. Id.

This Court finds no basis for Petitioner's equal protection claim.  He has failed to demonstrate any similarity of merit with regard to the <u>Mackey</u> case and his own matter. Indeed, the factual allegations regarding PCR counsel's performance in <u>Mackey</u> are quite dissimilar.  Moreover, Petitioner's trial counsel had retained a fingerprint expert unlike counsel in the <u>Mackey</u> case.  Accordingly, Claim X is denied for lack of merit.

## I.      Use of Perjured Testimony

Petitioner asserts in Claim XI that the prosecutor elicited false testimony from a police officer at trial concerning a June 1996 motor vehicle stop involving Petitioner. (ECF No. 1, Pet. Br. at 76-77.)  This claim was raised by Petitioner in his own <u>pro se</u> memorandum on PCR review, and was denied for lack of merit.

It is ironic that Petitioner is raising this claim of perjured testimony, as that highly-limited testimony was elicited by the State in an effort to preclude much more potentially-damaging testimony on an investigation of another robbery, Petitioner's arrest warrant, and a motor vehicle chase that might have had a prejudicial impact on Petitioner.  The issue was discussed at the March 24, 1998 <u>Miranda</u> hearing.  Petitioner's trial counsel objected to the proffer of evidence (the handgun found at the "motor vehicle stop") because it was being used purportedly as a prior bad act to prove the robbery charge at issue.  To accommodate any concern about exposing the underlying facts regarding Petitioner's arrest and involvement in another robbery investigation to the jury, the State agreed to sanitize the testimony of that police officer, i.e., refer to the June 1996 incident as a motor vehicle stop only, and not mention the arrest warrant.  The trial court found

the proffer to be appropriate.  (ECF No. 10-1, Ra3, 3-24-98 <u>Miranda</u> Hearing Tr. at

21:22-22:20; 27:4-7.)

Given this record of the case, this Court finds Petitioner's argument in Claim XI to

be lacking in any merit.  Consequently, the claim is denied.

### J.    Sentencing Claims

Petitioner argues in his three final grounds for habeas relief, Claims XII, XIII and

XIV, that his extended sentence violated his constitutional rights.  On June 15, 1998, the

trial court sentenced Petitioner as a second time offender under the Graves Act, N.J.S.A.

2C:43-6(c), and imposed concurrent terms of 60 years in prison with a 20 year parole

disqualifier to run consecutive to another sentence Petitioner was then serving for another

armed robbery.  The trial court stated at sentencing that the record "clearly indicate[d] the

use of a firearm during the commission of the robbery."  (ECF 38-26, 6-15-98 Sentencing

Tr. at 8:21-23.)  The court also weighed the aggravating and mitigating factors, finding

four aggravating factors: factor three, risk of another offense, which the court attributed

to a history of violent conduct; factor six, the nature and extent of the offense; factor nine,

deterrence; and factor eleven, the age of the victim.  The court found no mitigating

factors, observing that the "aggravating [factors] clearly and substantially outweigh

anything that could be said by way of mitigation."  (<u>Id.</u> at 8:24-9:8.)

Petitioner argues in Claim XII that the trial judge abused his discretion in

sentencing Petitioner to a sixty-year prison term with a twenty-year parole disqualifier

because "a qualitative weighing of the aggravating and mitigating factors in this case

does not support such a sentence."  (ECF No 1, Pet. Br. at 79.)  Petitioner raised this

claim on direct appeal.  The Appellate Division rejected Petitioner's argument for lack of merit, finding the sentence to be "unexceptionable," but the court remanded the matter for calculation of gap-time credit.  (ECF No. 10-1, Ra1, 11-5-99 App. Div. Op. at 4.)

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency."  See Grecco v. O'Lone, 661 F.Supp. 408, 415 (D.N.J. 1987).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984); see also 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  Ewing v. California, 538 U.S. 11, 20 (2003) (citations omitted).  There are three factors that may be relevant to a determination of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  Solem v. Helm, 463 U.S. 277, 292 (1983).  In addition, Solem does not mandate comparative analysis within and between jurisdictions, and there are four principles of proportionality review—"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors"—that "inform the final one: The

Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime". See Harmelin v. Michigan, 501 U.S. 957, 1001, 1004–05 (1991) (Kennedy, J., concurring in part and concurring in judgment) (quoted with approval in Ewing, 538 U.S. at 23).

This Court finds that the challenge to the state court's extended term sentencing for failure to properly weigh the aggravating and mitigating factors is not reviewable here.  Petitioner has presented no cogent argument why his sentence is unconstitutional in this regard, other than general allegations that the sentencing court did not properly weigh the aggravating and mitigating factors.  Moreover, Petitioner's sentence is not grossly disproportionate to the crime he committed.  Indeed, extended sentences are common and are not contrary to legitimate penological schemes.  Therefore, even if the Court were to read an Eighth Amendment argument into Petitioner's Claim XII, it would not state a violation of federal constitutional limitations.  Accordingly, Claim XII is denied.

Petitioner asserts in Claim XIII that he did not qualify for the Graves Act sentencing, as he was not indicted or convicted for possession and use of a firearm in the robbery offense under challenge.  (ECF No. 1, Pet. Br. at 81-85.)  Petitioner further argues in Claim XIV that his extended term sentence was illegal in light of State v. Franklin, 184 N.J. 516 (2005), as there was no charge for possession or use of a firearm during the robbery that was submitted to the jury for determination, and the jury never found that Petitioner used a real gun that would subject him to an extended term under the Graves Act.  (Id. at 85-87.)  In addition to his petition and supporting brief, Petitioner

submitted two letters further supplementing his arguments under Claims XIII and XIV of the petition.  (ECF Nos. 41, 42.)

Petitioner raised these claims in his state court application to correct an illegal sentence filed in December 2004.  The state court held oral argument on Petitioner's claims on October 28, 2005.  The court rejected Petitioner's arguments, finding that Petitioner had never contested at trial the issues concerning armed robbery and the use of a real gun.  Rather, Petitioner contested only whether he was the perpetrator of the crime. The court further noted "that the only evidence that was put before this jury" was that Petitioner was the perpetrator and that a real gun had been used.  (ECF No. 38-27, 10-28-05 Mot. Tr. at 10:22-12:18.)

The Appellate Division affirmed on appeal the denial of Petitioner's motion to correct an illegal sentence.  The Appellate Division first noted that Franklin applied "pipeline retroactivity", limiting the retroactive effect of its holding to defendants with cases on direct appeal as "of the date of this decision and to those defendants who raised Apprendi claims at trial or on direct appeal."  Franklin, 184 N.J. at 540.[6]  Petitioner's conviction was affirmed on direct appeal in November 1999, and he had not raised his

---

[6] Apprendi v. New Jersey held that under the Sixth Amendment any fact (other than a prior conviction) exposing a defendant to a sentence in excess of the relevant statutory maximum must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence. 530 U.S. 466, 490 (2000).  In Apprendi-based analysis, "statutory maximum" means the highest possible sentence a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant," i.e., that the "statutory maximum" is the maximum sentence a judge may impose without finding any additional facts, that is, except by taking notice of prior convictions.  See Blakely v. Washington, 542 U.S. 296, 301, 303 (2004).

<u>Apprendi</u> claims at trial or on direct appeal because <u>Apprendi</u> was decided in June 2000. <u>State v. Jenkins</u>, 2008 WL 2434869, at *2.

Moreover, the Appellate Division found no similarities between <u>Franklin</u> and Petitioner's case to warrant relief.  Unlike <u>Franklin</u>, the indictment in this case charged that Petitioner committed robbery "while armed with or threatening the use of a deadly weapon," thus providing Petitioner with adequate notice of the crimes for which the jury convicted him.  <u>Id.</u> at *3.  Furthermore, the two victims testified that the perpetrator had used a gun in connection with the robbery, and the jury did in fact find that Petitioner possessed or used a firearm during the commission of the robbery.  Therefore, the Appellate Division ruled that the trial judge properly sentenced Petitioner as a second offender under the Graves Act subject to an enhanced sentence.  <u>Id.</u>

As stated above, Petitioner argues in Claims XIII and XIV that his enhanced sentence under the Graves Act was based on a judge-made finding that the robbery involved a real gun in violation of <u>Apprendi</u> and <u>Franklin</u>.  This Court first observes that <u>Apprendi</u> does not apply retroactively to convictions that, like Petitioner's, were made final before <u>Apprendi</u> was announced.  <u>See</u> <u>United States v. Swinton</u>, 333 F.3d 481, 491 (3d Cir. 2003).  Moreover, the state court record shows that Petitioner received adequate notice of the armed robbery charge for which he was convicted by jury trial, and the jury did in fact find that Petitioner was the perpetrator of the robbery and had possessed or used a firearm during commission of the crime.  Thus, Petitioner's claims that his enhanced sentence under the Graves Act violated the Sixth and Fourteenth Amendments are completely meritless.  Accordingly, this Court concludes that the decisions of the

sentencing court and of the Appellate Division were neither contrary to, nor an unreasonable application of, clearly established federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented.  Therefore, Petitioner is not entitled to habeas relief on Claims XIII and XIV of the petition.

## V.      CERTIFICATE OF APPEALABILITY

This Court must determine whether a certificate of appealability should issue.  See 3d Cir. L.App.R. 22.2.  The Court may issue a certificate of appealability only if the Petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## VI.     CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue.  The Court will issue an appropriate order and judgment.

       __  s/Mary L. Cooper__

**MARY L. COOPER**
United States District Judge

Dated:  June 11, 2014